IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-02241-SKC

K.C.Q.,

    Plaintiff

v.

COMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## OPINION & ORDER

This action is before the court under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.*, for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying Plaintiff K.C.Q.'s[1] applications for supplemental security income (SSI) and disability insurance benefits (DIB). The Court has carefully considered the parties' briefs, the social security administrative record, and applicable law. No hearing is necessary.

Because Administrative Law Judge Matthew C. Kawalek (ALJ) applied the correct legal standards and substantial evidence in the record supports his findings, the court AFFIRMS the Commissioner's Final Decision.

---

[1] This Opinion & Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2.

1

## BACKGROUND

This action arises from Plaintiff's application for SSI and DIB on June 11, 2021. His claims were denied initially on December 13, 2021, and again upon reconsideration on May 10, 2022. On March 14, 2023, Plaintiff attended a telephonic hearing before the ALJ to determine whether he was disabled under the SSA. Dkt. 10.[2] Plaintiff represented himself at the hearing.

The ALJ issued a written order on May 11, 2023, which detailed why Plaintiff was not disabled under the SSA. AR: 34. Plaintiff requested review by the Appeals Council, which denied his request on September 6, 2023. AR: 11. The ALJ's decision is now the Final Decision of the Commissioner of Social Security. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff then timely filed this action. The Court has jurisdiction to review the Final Decision under 42 U.S.C. § 405(g).

\\
\\
\\
\\
\\

---

[2] The Court uses "Dkt. __" to refer to specific docket entries in CM/ECF and uses "AR: __" to refer to documents in the administrative record. The administrative record may be found at Dkt. 10.

## SSI/DIB FRAMEWORK[3]

A person is disabled within the meaning of the SSA "only if his physical and/or mental impairments preclude him from preforming both his previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (citing 42 U.S.C. § 423(d)(2)). "The mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Id.* "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Fritz v. Colvin*, No. 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

---

[3] Throughout this opinion, while the Court may cite relevant sections of Part 404 of Title 20 of the Code of Federal Regulations (which contain the Commissioner's regulations relating to disability insurance benefits), identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

The Social Security Regulations outline a five-step process to determine whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.
5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made based on the claimant's age, education, work experience, and residual functional capacity.

*Wilson*, 2011 WL 97234, at *2 (citing 20 C.F.R. § 404.1520(b)–(f)); *see also* 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). Impairments that meet a "listing" under the Commissioner's regulations (20 C.F.R. § Pts. 404 and

416, Subpt. P, App. 1) and a duration requirement are deemed disabling at Step Three with no need to proceed further in the five-step analysis. 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Between the Third and Fourth steps, the ALJ must assess the claimant's residual functional capacity (RFC). *Id.* § 416.920(e). The claimant has the burden of proof in Steps One through Four. The Commissioner bears the burden of proof at Step Five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The ALJ's decision in this case tracks the five-step process. At Step One, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 20, 2020. AR: 24. At Step Two, he found that Plaintiff had the following severe impairments: mild spondylosis, disc protrusion of the lumbar spine with radiculopathy; obstructive sleep apnea with hypoxemia; central sleep apnea; insomnia; narcolepsy without cataplexy; obesity; a depressive, bipolar, or related disorder (variably called depressive disorder, mood disorder, major depressive disorder, or major depression); and unspecified anxiety disorder. *Id.* At Step Three, he found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 25. He then found that Plaintiff had the RFC

> to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) as follows: the claimant can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. He can stand and/or walk 4 hours and sit 6 hours of an 8-hour workday. The claimant

5

> can never climb ladders, ropes, or scaffolds, and he can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. He can have no exposure to hazards, including unprotected heights, operating heavy machinery, or exposure to dangerous machinery. Mentally, he is limited to understanding, remembering, carrying out, and persisting at no more than simple tasks, defined specifically as those job duties that can be learned in up to 30 days' time. He can sustain only ordinary routines and make no more than simple, work-related decisions.

*Id*. at 27.

At Step Four, the ALJ determined Plaintiff was unable to perform any past relevant work. *Id*. at 32. At Step Five, the ALJ considered Plaintiff's age, education, work experience, and RFC to determine that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, such as merchandise maker (SVP 2, light) and collator operator (SVP 2, light). *Id*. at 33. The ALJ relied, at least in part, on testimony from a vocational expert who appeared at the hearing on March 14, 2023. Accordingly, the ALJ concluded that Plaintiff was not under a disability during the relevant period. *Id*. at 34.

## STANDARD OF REVIEW

In reviewing the Commissioner's Final Decision, the Court's

> review is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance.

*Lee v. Berryhill*, 690 F. App'x 589, 590 (10th Cir. 2017) (cleaned up, citing *inter alia Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)); *see also* 42 U.S.C.

§ 405(g) ("The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive.").

A court may not reverse an ALJ just because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing the ALJ's decision was justified. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "We review only the sufficiency of the evidence, not its weight…. Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views." *Lee*, 690 F. App'x at 591-92. Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). A reviewing court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

Plaintiff raises a single issue. He argues the ALJ "erred by failing to properly evaluate and explain his analysis of the restrictions assessed by David Benson, Ph.D., who performed the agency's consultative psychological evaluation." Dkt. 11, ECF p.3.

7

Dr. Benson, who examined Plaintiff in May of 2022, assessed Plaintiff as having up to a marked impairment on his ability to respond appropriately to work situations and changes in routine work settings. AR: 572. The ALJ described Dr. Benson's report in his explanation of Plaintiff's RFC as follows:

> [Dr. Benson opined that the] claimant has mild impairment in his ability to interact appropriately with the public, supervisors, and peers. He has a moderate to marked impairment in his ability to respond appropriately to usual work situations and to changes in routine work settings. This opinion is not persuasive. Dr. Benson's opinion regarding up to marked adaptive limitations appears to be supported primarily by the claimant's subjective allegations, and it is not consistent with the claimant's limited mental health treatment, which has consisted exclusively of medication prescribed by his primary care provider.

*Id.* at 31. Considering this assessment, Plaintiff contends the ALJ did not adequately explain why Dr. Benson's opinions were unsupported or how the opinions were inconsistent with other evidence in the administrative record. The Court agrees with Defendant that the ALJ adequately explained himself and substantial evidence in the record supports his conclusion that some of Dr. Benson's opinions are unpersuasive.

Medical opinions are considered by an ALJ based on (1) supportability, (2) consistency, (3) the relationship between a medical professional and claimant, (4) the medical professional's specialization, and (5) other factors. 20 C.F.R. § 404.1520c (c)(1)-(5) (the Regulation). Supportability and consistency are the most important factors when determining the persuasiveness of a medical source's opinions or prior administrative medical findings. *Id.* at (b)(2). "Supportability" is bolstered by

8

"objective medical evidence and supporting medical explanations presented by a medical source…" *Id*. at (c)(1). A source's "consistency" is measured by its harmony with "the evidence from other medical sources and nonmedical sources in the claim…" *Id*. at (c)(2). When a medical source provides multiple opinions or findings, it is sufficient for the ALJ to "articulate how [they] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. at (b)(1).

The ALJ must also "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions." *Id*. at (b)(2). But "[t]he Regulations do not 'prescribe the depth at which the ALJ must discuss' the factors of supportability and consistency." *M.L. v. O'Malley*, No. 1:23-cv-02315-NYW, 2024 WL 3792378, *4 (D. Colo. Aug. 13, 2024) (quoting *Harp v. Kijakazi*, No. 1:21-0275-KRS, 2022 WL 2341740 at *6 (D.N.M. June 29, 2022)). "[A]t a minimum, the ALJ must 'provide an explanation that allows the reviewing court to follow [their] reasoning and communicates how [they] considered the factors of consistency and supportability for each medical source's opinions.'" *Id*. (quoting *Zambrano v. Kijakazi*, No. 1:20-1356-KRS, 2022 WL 1746765 at *5 (D.N.M. May 31, 2022)).

### 1. Supportability

Dr. Benson opined that Plaintiff had moderate to marked adaptive limitations. AR: 31, 572. The ALJ determined those limitations lacked supportability because

9

they were unsupported by objective medical evidence. AR: 31 ("Dr. Benson's opinion regarding up to marked adaptive limitations appears to be supported primarily by the claimant's subjective allegations[.]"). Plaintiff contends the ALJ failed to adequately articulate his reasoning as the Regulation requires, and that Dr. Benson's report is in fact supported by objective medical evidence. The Commissioner argues the Court can follow the ALJ's reasoning and Dr. Benson's opinion was appropriately analyzed under the Regulation. The Court agrees with the Commissioner.

First, the ALJ makes plain his finding that Dr. Benson's opinion lacked support because it was primarily supported by Plaintiff's subjective allegations. The subjectiveness of medical evidence is an appropriate consideration when evaluating the persuasiveness of medical source opinions. *See B.A.Y. v. Comm'r, SSA*, No. 23-1265, 2024 WL 2844697, *3 (10th Cir. June 5, 2024); *see also Miller v. Comm'r, SSA*, No. 23-4034, 2024 WL 2844676, *7 (10th Cir. June 5, 2024) (medical source opinions unsupported by objective testing is a legitimate consideration in evaluating persuasiveness of those opinions). Plaintiff argues that Dr. Benson provided medical opinions at least in part based on observations he made, and not just on Plaintiff's self-reported symptoms. For example, Dr. Benson described Plaintiff as "noticeably anxious" and "alert and oriented." AR: 570, 571. But these were Dr. Benson's own subjective observations of how Plaintiff presented that day; they were not diagnoses or other medical findings based on objective testing Dr. Benson employed.

Second, other objective medical evidence discussed by the ALJ further informs his conclusion that Dr. Benson's opinion was not supportable. AR: 31 (the ALJ noting "a pattern of conservative mental health treatment and an absence of gross abnormalities recorded in treatment notes or during the psychological consultative examination" with Dr. Frommelt). Plaintiff's argument that objective medical evidence does support Dr. Benson's opinion is tantamount to a request to reweigh the evidence, which the Court cannot do. *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007).

### 2. Consistency

The ALJ also discounted the consistency of Dr. Benson's opinion that Plaintiff has up to marked adaptive limitations. AR: 31. The ALJ explained that Dr. Benson's opinion is inconsistent with Plaintiff's limited history of mental health treatment, and thus an unpersuasive source for developing Plaintiff's RFC. *Id*. Plaintiff concedes that considering Plaintiff's lack of mental health treatment to evaluate the consistency of a medical source is proper under the Regulation but nonetheless argues that the ALJ did not adequately articulate his reasoning. The Commissioner argues that the Court can follow the ALJ's reasoning, and the ALJ did in fact articulate himself sufficiently under the Regulation. The Court again agrees with the Commissioner.

The ALJ adequately explained his reasoning. First, as mentioned above, he explained Dr. Benson's opinion "is not consistent with the claimant's limited mental

11

health treatment which has consisted exclusively of medication prescribed by his primary care provider." AR: 31. Plaintiff's treatment history was an appropriate consideration for the ALJ when evaluating Dr. Benson's opinion for consistency.[4]

Second, elsewhere when discussing other medical experts, the ALJ notes an "absence of a mental diagnosis in the available medical records," that "additional evidence received later documents the diagnosis and treatment of psychological symptoms prior to the date last insured and continuing to the present," but those records exhibit "a pattern of conservative mental health treatment and an absence of gross abnormalities recorded in treatment notes or during the psychological consultative examination." AR: 31. These findings (when the ALJ discussed other medical opinions) help inform the ALJ's conclusion regarding the lack of consistency he found in Dr. Benson's opinion. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (substantial evidence is based on the record as a whole).

To be sure, the ALJ accepted Dr. Gayle Frommelt's opinion as somewhat persuasive on issues related to Plaintiff's capacity to function in a work setting. AR:

---

[4] It is true, as Plaintiff points out, that "the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations." *Grotendorst v. Astrue*, No. 09-2132, 2010 WL 1049791, *4 (10th Cir. 2010). But this applies more acutely to an ALJ's development of a claimant's catalogue of severe impairments at Step Two. *See id.* Here, the ALJ used Plaintiff's medical treatment history to evaluate the consistency of Dr. Benson's opinion with the entire record. A claimants medical treatment history is an appropriate consideration for an ALJ when determining the consistency of a medical opinion with the record. *See M.L. v. O'Malley*, No. 23-CV-02315-NYW, 2024 WL 3792378, *6 (D. Colo. Aug. 13, 2024).

12

31, 96, 101. Dr. Benson's opinion conflicts with Dr. Frommelt's. *Id.* at 571; *but see id.* 96, 101. Dr. Frommelt opined Plaintiff has up to moderate impairments in his ability to respond to changes in work settings, interact with others, and complete a normal workweek. *Id.* at 96, 101. The ALJ included this opinion in Plaintiff's RFC to "sustain only ordinary routines and make no more than simple, work-related decisions." AR: 27. When the ALJ considered both Dr. Benson's and Dr. Frommelt's differing opinions, he assessed their consistency with Plaintiff's limited mental health treatment and good responses to medication. AR: 31. The ALJ's treatment of these competing expert opinions further demonstrates his reasoning in discounting the consistency of Dr. Benson's opinion.[5]

\*   \*   \*

For the reasons shared above, the Court is satisfied that the ALJ considered all relevant facts, applied the correct legal standards, adequately explained the persuasive value of Dr. Benson's opinion(s), and that the record contains substantial

---

[5] Despite finding Dr. Benson's opinion(s) not persuasive, read as a whole, it is clear the ALJ paid reasonable attention to Dr. Benson's report and did not merely identify an inconsistency and move on. The ALJ used Dr. Benson's findings to describe how the Plaintiff's severe impairments do not meet or medically equal one of the listed impairments. AR: 25-26. He also accepted many of Dr. Benson's observations, including that Plaintiff could repeat back to Dr. Benson only one of five words after a delay. *Id* at 26. The ALJ also accepted some of Dr. Benson's medical opinions, like how Plaintiff has a moderate limitation in understanding, remembering, or applying information. *Id* at 25. At various points in his decision, the ALJ describes Dr. Benson's report with detail. Certain of Dr. Benson's medical opinions appear to have influenced aspects of Plaintiff's RFC, such as Dr. Benson's opinions regarding Plaintiff's memory and cognitive capacity. *See* AR: 26, 27, 31.

evidence from which the Commissioner could properly conclude under the law and regulations that Plaintiff was not disabled within the meaning of Titles II or XVI of the Social Security Act.

Accordingly, IT IS ORDERED that the Commissioner's Final Decision is AFFIRMED and this civil action is DISMISSED, with each party paying their own fees and costs.

DATED: June 24, 2025

BY THE COURT:

S. Kato Crews
United States District Judge